IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

THE FLORIDA DEMOCRATIC PARTY,

    Plaintiff,

v.                                              CASE NO. 4:04cv395-RH/WCS

GLENDA E. HOOD, etc., et al.,

    Defendants.

_____/

**ORDER AWARDING ATTORNEY'S FEES**

In this action the plaintiff Florida Democratic Party obtained a preliminary injunction altering the manner in which the defendant State of Florida election officials conducted the 2004 presidential election. The injunction was later made permanent. As determined by a prior order, plaintiff is a "prevailing party" entitled to recover reasonable attorney's fees under 42 U.S.C. §1988. This order now determines the amount of the fee award.

Plaintiff prevailed only in part. Plaintiff lost the most important part of its claim. Applying the standards set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), I conclude that plaintiff should recover 40% of

the lodestar calculated based on all hours reasonably devoted to the litigation as a whole.

## I

Plaintiff, the Florida Democratic Party, brought this action against defendants the Florida Secretary of State Glenda Hood and the Director of the Division of Elections Dawn Roberts in their official capacities. Plaintiff sought declaratory and injunctive relief under 42 U.S.C. §1983 and 42 U.S.C. §15482, part of the Help America Vote Act ("HAVA"), which provides voters in federal elections a right to cast provisional ballots. Plaintiff asserted the Act afforded voters a right (1) to cast a provisional ballot at a polling place even if local officials assert that the voter is at the wrong polling place, and (2) to have that ballot counted, even if the voter is in fact at the wrong polling place, if the voter meets all requirements of state law other than the requirement to vote at the proper polling place.

Plaintiff moved for a preliminary injunction. Although defendants initially contested both of plaintiff's claimed rights, defendants changed their position with respect to the first claimed right during the hearing on plaintiff's motion for preliminary injunction, in response to questioning by the court. From that point

forward, defendants conceded that a voter must be allowed to cast a provisional ballot if the voter makes the declaration and written attestation required by federal law, even if election workers conclude the voter is at the wrong polling place. I entered a preliminary injunction requiring defendants to allow such voters to cast provisional ballots. I denied plaintiff's request for a preliminary injunction requiring defendants to count provisional ballots that were in fact cast at the wrong polling place. The 2004 presidential election went forward in accordance with these rulings.[1]

After the election, all parties agreed that final judgment should be entered consistent with the rulings on which the preliminary injunction was based. Thus each party agreed that no trial or further presentation of evidence was necessary or appropriate. Each party reserved, however, all rights related to the issue of attorney's fees. In accordance with the substantive rulings on which the preliminary injunction was based and the parties' agreement, judgment was entered.

Under this court's bifurcated attorney's fee procedure, a party's *entitlement* to fees must be determined prior to litigation of the *amount* of fees. *See* N.D. Fla.

---

[1] Indeed, after conceding that voters were entitled to submit provisional ballots even if election workers concluded they were at the wrong polling place, defendants promptly instructed their election workers to proceed accordingly. Defendants did so prior to actual entry of the preliminary injunction.

Loc. R. 54.1. Plaintiff moved for a determination of its entitlement to a fee award. By order entered May 9, 2005, the motion was granted. *See* Order Establishing Entitlement to Attorney's Fees (document 82). The parties then followed the procedures established by the Local Rule for submission of any disagreement concerning the proper *amount* of a fee award. The issue is now ripe for determination.

## II

When, as here, a party is entitled to recover fees under §1988 as a "prevailing party" but has prevailed on only some, not all, of the party's claims, the extent of the party's success is a significant factor in the determination of the amount of fees to be awarded. The Supreme Court so held in *Hensley*, which addressed precisely this issue and set forth the governing standards.

Even in a partial-success case, the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. This is generally referred to as the "lodestar."

In the case at bar, the parties have agreed that the hours and rates claimed by plaintiff are reasonable and that the lodestar is $77,665. Having independently

reviewed this aspect of the claim, I so find.

The issue, then, is what portion of this amount should be awarded, in light of plaintiff's success on only some, not all, of its claims. In *Hensley*, the Supreme Court said:

> If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Id.* at 436.  The Court emphasized the flexible nature of the inquiry:

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.

*Id.* at 436-37, 103 S. Ct. at 1940.  Ultimately, in cases involving limited success, *Hensley* requires the district court to give a "concise but clear explanation of its reasons for the fee award . . . . [T]he district court should make clear that it has considered the relationship between the amount of the fee awarded and the results

obtained." *Id.* at 437, 103 S. Ct. at 1941.

Later decisions make clear that one factor that affects the analysis is the extent of any public benefit secured through the litigation. *Compare Andrews v. United States*, 122 F.3d 1367, 1375-76 (11th Cir. 1997) (sustaining defendant's challenge to fee award because of district court's failure to give appropriate consideration to plaintiff's limited success; plaintiff recovered small portion of claimed damages and vindicated no important non-monetary principle), *with Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987) (rejecting defendant's challenge to substantial (but reduced) fee award; though plaintiff recovered only modest damages, district court properly considered public benefit flowing from vindication of constitutional rights). As the Eleventh Circuit said in *Popham*:

> The affirmation of constitutional principles produces an undoubted public benefit that courts must consider in awarding attorneys' fees under Section 1988. *City of Riverside v. Rivera,* --- U.S. ----, 106 S. Ct. 2686, 2694-95, 91 L. Ed. 2d 466 (1986) (plurality opinion). When courts affirm the constitutional rights of citizens, public officials are deterred from violating other citizens' rights in the future. Thus, in awarding attorneys' fees under Section 1988, courts should not place "*undue* emphasis on the modest money damages that were found by the jury." *Williams v. Thomas,* 692 F.2d 1032, 1038 (5th Cir. 1982) (emphasis added).

*Popham*, 820 F.2d at 1580 (emphasis by the court). As later cases make clear, a

court should neither ignore public benefits a plaintiff secures, *see Villano v. City of Boynton Beach*, 254 F.3d 1302, 1304, 1307 (11th Cir. 2001) (sustaining plaintiff's challenge to limited fee award because of district court's failure to give adequate consideration to public benefit), nor overlook the *absence* of public benefit. *See Dillard v. City of Greensboro*, 213 F.3d 1347, 1356-57 (11th Cir. 2000) (sustaining defendant's challenge to fee award partly because of district court's failure to consider adequately the absence of public benefit derived from some of the attorney time at issue).

In the case at bar, plaintiff made no claim for damages. Plaintiff sought, instead, solely to vindicate its view of the law governing the casting and counting of provisional ballots. This was a matter of enormous import. Indeed, the statute at issue was adopted specifically in response to alleged irregularities in the 2000 presidential election in Florida. The two sides in that election probably will never agree on whether the outcome was affected by election workers' erroneous determination that certain persons who attempted to vote were ineligible. But the very existence of the dispute was itself a problem of substantial importance. Elections, like trials, should not only be fair, but should also *appear* to be fair. Perception matters.

Congress addressed this issue in part by creating, as part of the Help

America Vote Act, a federal right to cast a provisional ballot. The issue in this case was whether the manner in which defendants proposed to conduct the 2004 presidential election complied with Act. Plaintiff asserted the Act afforded voters a right (1) to cast a provisional ballot at a polling place even if local officials asserted that the voter was at the wrong polling place, and (2) to have that ballot counted, even if the voter was in fact at the wrong polling place, if the voter met all requirements of state law other than the requirement to vote at the proper polling place. Plaintiff prevailed on the first claim, but not on the second.

Beyond any question, the second claimed right was the more important.[2] The object of any election ultimately is to select a winner. This turns on the number of ballots that are counted. Casting a provisional ballot that ultimately is not counted does not in fact affect the outcome of the election.

But this does not mean plaintiff's first claimed right—the right to cast a provisional ballot even if ultimately it is not counted—was not also an important part of this litigation. Provisional ballots are available because election workers do not have perfect knowledge on election day; they may not know whether a person ultimately will or will not be determined to have been eligible. Affording a

---

[2] Indeed, when, during oral argument on plaintiff's motion for a preliminary injunction, defendants encountered tough sledding on this issue, they quickly relented. From that point forward, plaintiff's first claimed right was unopposed.

*Case No: 4:04cv395-RH/WCS*

potential voter a reliable—and enforceable—means of asserting his or her right to vote on election day, even if election workers assert the voter is ineligible, serves at least three important purposes. First, it tells election workers that their decisions are subject to check. A bank teller who is honest and tries to keep a correct tally of the money in the drawer may try even harder if he or she knows there will be an audit at the end of the day. The effect on a dishonest bank teller may be even more pronounced. Second, allowing provisional balloting provides some assurance that eligibility determinations have been made correctly. Rather than a hurried decision by a volunteer amid the chaos of a busy election day, the result is a decision by appropriate officials at a more leisurely pace with greater transparency. And third, even if the actual decision with respect to any ballot is not changed and the number of votes counted for each candidate ultimately remains the same, allowing provisional balloting improves the *perception* that the election has been conducted fairly.

  This record does not indicate the number of provisional ballots that ultimately were counted in the 2004 presidential election in Florida, but that would not have been accepted under the erroneous approach originally taken by defendants. Nor does the record confirm that any election worker was more careful and, as a result, allowed anyone to vote who otherwise would have been

excluded. The number of votes in either of these categories probably was not large.[3] But this litigation served the important public purposes set forth above, even in respects unrelated to the actual vote count.

It is impossible to identify with any accuracy the number of hours devoted to each of plaintiff's two claims in this litigation. They overlapped, at least until defendants withdrew their objection to plaintiff's first claimed right. And it is impossible to assign accurate percentages to the portions of the case on which plaintiff did and did not prevail. Certainly the sheer number of claims in each category is not a reliable gauge. *See Hensley*, 461 U.S. at 435 n.11.

What is clear is that plaintiff prevailed on a substantial claim and lost on an even more substantial claim. Plaintiff vindicated important rights. On balance, I conclude that a reasonable fee is $31,066. This is 40% of the lodestar.

In reaching this result, I have considered the lodestar and the extent of plaintiff's success, as set forth above. I also have exercised what the Supreme Court has called "billing judgment," *Hensley*, 461 U.S. at 437, considering not only the affidavits in this record but also my own knowledge of fees reasonably

---

[3] Plaintiff says that in the 2004 Florida presidential election, more than 27,000 provisional ballots were cast, over 9,000 were counted, and some 3,000 were rejected as having been cast at the wrong polling place. Aff. of Alan Fein (document 83, ex. 1) at 2. The record does not indicate how many of the 9,000 counted provisional ballots involved any issue regarding the correct polling place.

*Page 11 of 13*

charged in this district for services of this type. As the Eleventh Circuit has said:

> The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.

*Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

A significant factor in this case is that defendants' attorneys (like plaintiff's) provided services of excellent quality and exhibited a high level or professionalism. They handled the case efficiently. Plaintiff's attorneys have claimed a lodestar well within the range of reasonableness. Had the quality or level of professionalism been lower, or had the lodestar been higher because the case was handled less efficiently, I probably would have chosen a success percentage lower than 40. What matters, of course, is the net amount of the fee, not how it was calculated. In this case, for this work, achieving this result, $31,066 is a reasonable fee.

That leaves for consideration only the issue of expenses. Plaintiff submitted a bill of costs that included both costs that are taxable under 28 U.S.C. §1920 (which governs taxation of costs in civil litigation generally) and also expenses that are not taxable under §1920 but are customarily reimbursed to attorneys by their

private, fee-paying clients.  Expenses of this latter type may be recovered by a prevailing party as part of its reasonable attorney's fee under 42 U.S.C. §1988. *See, e.g., NAACP v. City of Evergreen*, 812 F.2d 1332, 1337 (11th Cir. 1987).

The clerk already has taxed costs in the amount of $893.10 under §1920. Plaintiff claims an additional $4,937.35 under §1988.  Defendants have not contested plaintiff's assertion that these expenses were reasonably incurred and customarily would be reimbursed by a private, fee-paying client.  I so find.  These expenses will be awarded at the same 40% rate set forth above, based on plaintiff's partial success.

In sum, plaintiff is entitled to recover $31,066 for attorney's fees and $1,974.94 for expenses under §1988, in addition to the $893.10 already taxed by the clerk as costs under §1920.  Accordingly,

IT IS ORDERED:

The clerk shall enter judgment stating, "Plaintiff Florida Democratic Party shall recover from defendants the Florida Secretary of State Glenda Hood and the Director of the Division of Elections Dawn Roberts in their official capacities the sum of Thirty-One Thousand Sixty-Six Dollars ($31,066.00) as attorney's fees, One Thousand Nine Hundred Seven-Four and 94/100 Dollars ($1,974.94) as expenses, and Eight Hundred Ninety-Three and 10/100 Dollars ($893.10) as

taxable costs, for a total of Thirty-Three Thousand Nine Hundred Thirty-Four and 04/100 Dollars ($33,934.04)."

 SO ORDERED this 1st day of September, 2005.

            s/Robert L. Hinkle
            Chief United States District Judge